Pinson v. Young.

---

No. 20,516.

WILLIAM PINSON and EMMA PINSON (EMMA PINSON, *Appel-
lee*) v. WILLIAM YOUNG and JOHN YOUNG, Partners, etc.,
et al. (WILLIAM YOUNG and THE INDEPENDENT POWDER
COMPANY, *Appellants*).

SYLLABUS BY THE COURT.

1. DYNAMITE — *Negligent Storage — Evidence.* Evidence examined and
held sufficient to fix responsibility for the negligent storage of dyna-
mite.

2. DYNAMITE—*Negligence—Explosion—Death—Proximate Cause.* Where
dynamite is stored in a building in violation of a city ordinance, and
the dynamite is exploded by a fire in the building, and a fireman on
duty at the building is killed thereby, such negligent storage of the
dynamite is a proximate cause of the death of the fireman.

3. TRIAL—*Instructions.* Requested instructions examined and held prop-
erly refused, and appellants' rights duly recognized in those given.

Appeal from Cherokee district court; JAMES N. DUNBAR,
judge. Opinion filed May 12, 1917. Affirmed.

*William F. Sapp, A. S. Wilson,* both of Galena, and *J. W.
McIntire,* of Joplin, Mo., for the appellants.

*A. D. Schreiner,* of Galena, and *Charles Stephens,* of Co-
lumbus, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs are the father and mother of John Pinson, a Galena fireman, who was killed by an explosion while he was extinguishing a fire in a building containing dynamite. The deceased was a single man and his parents were partly dependent upon him for support, and they brought this action against the defendants for damages for the wrongful death of their son.

The defendants, Young Brothers, were engaged in mining operations in and about the city of Galena and were tenants of the building. In one corner of it they had constructed a small room for the storage of explosives. There is a city ordinance in Galena regulating the keeping of explosives, making it unlawful to store over two hundred pounds of powder in any building within the city except "in a perfectly constructed powder house, subject to the approval of the mayor and council."

The Independent Powder Company, another defendant, is a corporation engaged in the manufacture, sale and distribution of explosives in and about the Galena mining district. Still another defendant was the owner of the building, but its relation to this lawsuit needs no attention.

The plaintiffs charged that Young Brothers and The Independent Powder Company brought about the death of their son by negligently storing large quantities of dynamite and other explosives in the building in violation of the city ordinances, that the explosives thus stored were a dangerous nuisance, and,

"That said deceased, acting in the line of his duty and in the exercise of ordinary care, not knowing of the existence in said building of any of said explosives herein described, was standing on the regularly traveled sidewalk just north of said building where he and all others had, at all times, a right to be, near the north end of said brick building holding in his hands a large rubber fire hose through which he was directing water onto said flames, when, because of the recklessness, gross and wanton carelessness and negligence of said defendants, their agents and employees, and each of them, as herein alleged, the said dynamite and detonating caps, stored in said building as aforesaid, exploded with terrific force and violence, completely demolishing said brick building, throwing the north wall upon the said John Elmer Pinson and then and there killing him instantly; that the proximate cause of his death was

the gross and wanton carelessness and negligence of said defendants, their agents and employees, and each of them in there maintaining an inherently and extremely dangerous nuisance by storing and keeping of said explosives in said brick building as herein alleged."

Issues were joined, and the cause was tried to a jury which made special findings and rendered a general verdict for the plaintiffs and against Young Brothers and The Independent Powder Company.

The powder company is the principal appellant and it assigns certain errors which will be noted in order. It contends first that there was no evidence to prove that the powder company was connected in any way with Young Brothers in the ownership or control of powder in their magazine. But there was substantial evidence to show that the explosion which caused the greatest damage was not occasioned, or not occasioned alone, by the relatively small amount of powder in the magazine or room constructed in the corner of the building for powder storage, but by the explosion of a much larger quantity of dynamite deposited in the building outside this storage room. Some of the evidence tended to show that while it was the custom to supply the mining operators in and about Galena, including Young Brothers, with powder in the early hours of the day, the powder company was frequently seen to unload powder at this building in the evening, and that it usually commenced its daily business each morning at Young Brothers' building, from which it might properly be inferred that it used this building as a powder storehouse at night and as a place of supply or partial supply for its morning trade. Certain other incidents tended to show that the powder company kept a supply of powder in this building from which it made deliveries at later hours of the day. A day or two before the explosion a large number of boxes of dynamite were seen in the building outside the powder storage room. The day before the accident a number of such boxes were observed, bearing the words "Independent Powder Company." At least five such boxes (250 pounds) were placed in the building the evening before the explosion by the defendant company's delivering agent. After the fire, it was seen that the depression or cavity in the ground where the dynamite had exploded was not in the corner of the building where the powder storage room had been, but farther from that corner and near where the dyna-

mite boxes had been seen before the fire.   We note, of course, that the evidence on this point is conflicting—a controverted question of fact for the jury's consideration.   Other circumstances tended to show that the powder company kept temporary supplies of powder in the building, and while it may be true that the powder company was not interested with Young Brothers as owner or in control of the dynamite kept in the storage room, that fact would not relieve the company from the consequences of its negligent acts in relation to the explosives in the building which it did own, and which were sufficiently identified and proved as its property to require the question of its ownership and control to be submitted to the jury.   Moreover, if it were established that the powder company knowingly aided or abetted Young Brothers in the maintaining of this dangerous nuisance the company would not be relieved of liability even if it did not own the powder wrongfully or negligently stored in disregard of the public safety or in disregard of the city ordinance.   The mere question of ownership of the powder was not primarily important.   Who were responsible for the negligence?   By whose negligent acts and omissions was this large amount of dynamite placed where it had no right to be?   Who aided and abetted in this wrongdoing?   These were the primary considerations in fixing the responsibility for the death of John Pinson.   The relation of the powder company to these derelictions was sufficiently established to make its responsibility a question for the jury's determination.

It is next contended that the fire and not negligent storage of the dynamite was the proximate cause of Pinson's wrongful death.   Both were proximate causes.   The fire alone would not have caused his death.   The dynamite alone might not have caused it.   Perhaps the fire was the result of negligence. The storage of the dynamite was undoubtedly so.   These two contributing delinquencies, the fire and the negligent storage of the dynamite—both proximate—wrought this result.   (*Kansas City v. Slangstrom*, 53 Kan. 431, Syl. ¶ 2, 36 Pac. 706; *Street Rly. Co. v. Stone*, 54 Kan. 83, Syl. ¶ 7, 37 Pac. 1012; *Luengene v. Power Co.*, 86 Kan. 866, Syl. ¶ 5, 122 Pac. 1032; *Johnson v. Northwestern Tel. Exch. Co.*, 48 Minn. 433, 436; *Young v. Syracuse, B. & N. Y. R. Co.*, 61 N. Y. Supp. 202, 204; *Ring v. City of Cohoes,* 77 N. Y. 83; *Phillips v. N. Y. C. & H. R. R. Co.*,

127 N. Y. 657; *Mexican National Ry. Co. v. Mussette*, 86 Tex. 708, 719.)

The appellant powder company complains of the trial court's refusal to give certain instructions. These have been carefully examined. Those requested were constructed on the theory that the appellant was not responsible for the dynamite which it had sold and delivered to Young Brothers and which was stored in the magazine, but they persistently ignored the responsibility attaching to appellant for the much larger amount of dynamite stored in the building and which was no part of the amount supplied to Young Brothers for the use of the latter. The appellant's rights were duly recognized in the instructions given by the court, particularly in instruction 14, which reads:

"14. The court instructs the jury that the mere fact that the Independent Powder Company from day to day, upon the request of Young Brothers, or their engineer, sold and delivered to Young Brothers such quantities of dynamite and detonating caps as were ordered would not be sufficient to make the defendant Independent Powder Company liable in this action; and if you find and believe from the evidence that powder was being used in the mine by Young Brothers while working therein and that the Independent Powder Company did not at any one time in September, 1912, sell and deliver to them more than 200 pounds or four boxes of powder and did not store or keep in the building destroyed by fire on September 25, 1912, any powder belonging to the Independent Powder Company; even though you may believe from the evidence that Young Brothers had more than 200 pounds of dynamite in their possession which was owned by them on the 25th day of September, 1912, or prior thereto, you should find the issues for the defendant, the Independent Powder Company, on both counts of the plaintiff's petition."

Nothing approaching the gravity of reversible error appears anywhere in the record, and the judgment is affirmed.