No. 35,943

Ray Packer, *Appellee*, v. The Fairmont Creamery Company, The Concordia Company, O. Jasperson (and Henry Dannenberg), *Appellants*.

(149 P. 2d 629)

Opinion on rehearing filed June 10, 1944.

*Charles L. Hunt*, of Concordia, argued the cause, and *Frank C. Baldwin*, of Concordia, was on the briefs for the appellants.

*A. W. Relihan*, of Smith Center, argued the cause, and *T. D. Relihan*, of Smith Center, was on the briefs for the appellee.

OPINION ON REHEARING

The opinion of the court was delivered by

DAWSON, C. J.: This is a rehearing. The case has been rebriefed and reargued, but our original statement of facts and the jury's general and special findings as set forth in ante, p. 191, 146 P. 2d 401, need not be repeated.

Considering once again whether finding No. 14 and the special findings which supplement it, No. 10 and No. 12, should compel judgment for defendant notwithstanding the general verdict, a majority of this court holds otherwise. It reasons thus: The jury found that defendant's negligence lay in failure to apply his brakes and in making no attempt to consider the other driver. (Finding No. 8.) Since the Dannenberg car reached the bridge first (finding No. 9), and it only traveled eight feet on the bridge (finding No. 1), and the bridge was 53½ feet long, it was fairly within the evidence that if Jasperson who drove defendant's car had given any consideration to the other driver, who was obviously having some difficulty with his car since it crossed over from its own lane of traffic into the path of the Jasperson car a few feet before it reached the bridge, Jasperson might have applied his brakes and might have averted or greatly minimized the force of the collision. At least a jury might so conclude. Moreover, by the jury's finding No. 2 (a), (b) and (c), Jasperson did not reduce his speed more than about ten miles per hour between the narrow bridge sign 282 feet west of the bridge and the point of collision—a distance of 327½ feet. Finding No. 13 accords with the details of finding No. 2, and likewise accords with so much of No. 8 as states that Jasperson made no attempt to consider the other driver. Furthermore, while Jasperson testified that he heard no such remark from one of his passengers, "What is that fool trying to do?" at the time the Dannenberg car crossed out of the west-bound lane of traffic into the path of the Jasperson car, the jury had the right to believe she did say so, and that Jasperson heard her, yet he drove ahead, as shown in the jury's findings No. 8 and No. 13.

The court reaffirms its judgment that the special findings of the jury did not require the rendition of judgment for defendant non obstante.

In the motion for a rehearing counsel for appellant also suggests that our first opinion did not discuss the question of Packer's con-

tributory negligence. When he and Dannenberg were 300 feet east of the bridge he said, "Stop, Henry, you can't make it." (Finding No. 4 [a].) Henry Dannenberg did not stop, and did not even slacken his speed (which was 35 to 40 miles per hour, according to plaintiff's testimony) until he was about 90 feet east of the bridge (finding No. 5), yet Packer gave no second warning and made no other protest. Defendant insists that the want of any further protest or warning by plaintiff after the one given at 300 feet from the bridge, which brought no response or compliance by Dannenberg who continued to maintain his high speed of 35 to 40 miles per hour for another 210 feet before he made any attempt to decrease it, was contributory negligence on the part of plaintiff which should bar a recovery. Mayhap a jury would be justified in such a conclusion; but we think it was a jury question, not one which could be decided adversely to plaintiff as a matter of law. The trial court's instruction, No. 17, fairly covered the question of plaintiff's contributory negligence, thus:

"It was the duty of the plaintiff in this case to warn the witness, Dannenberg, of any apparent or probable danger of continuing down the road, in his automobile under the situation presented as soon as possible after plaintiff realized such danger, and in giving such warning plaintiff was bound to use ordinary care and diligence in making the driver of the car hear and understand such warning, and if such warning was ignored or not heeded by the driver it would then be the duty of plaintiff to reasonably remonstrate with the driver of the car and demand the car be stopped if there were time and opportunity to do so, and if plaintiff did not use such ordinary care and reasonable effort as the situation offered to perform such duties his own negligence bars a recovery on his part and your verdict should be for the defendants."

In our recent case, *Orr v. Hensy*, 158 Kan. 303, 147 P. 2d 749, we commented on its earlier companion case where the question was whether a passenger in an automobile was guilty of contributory negligence in failing to warn the driver of an impending collision. We said the passenger—

"Could not in all respects be held to every detail of duty imposed upon the driver of the automobile to govern its operation in accord with the rules of the road and to operate it with due regard to other traffic which could be seen approaching the crossing from a different highway." (p. 311.)

Counsel for appellant urge that some of the other errors assigned in its first brief not discussed in our original opinion should be treated here, as they are likely to arise again. One of the items included in the jury's verdict was "Medical expense, $625." It is

contended, correctly we think, that there was no evidence to support that item. The collision occurred on October 2, 1941; this action was tried at the March term, 1943—almost a year and a half later; and in that long interval no medical or surgical treatment had been given the plaintiff, nor was there any evidence that such treatment was contemplated. There was testimony that a local doctor in Gaylord had examined Packer the day of his alleged injury, and told him to go home and go to bed, and that Packer returned the next day and that he gave him some medicine and told him to go home. Doubtless Packer did incur some nominal expense for this professional service and medicine but there was no evidence of its amount, or what Packer paid for it. On the whole, we think that the court's instruction No. 21, which assumed that competent and relevant testimony had been offered in respect to this particular item of expense, although not inaccurate as an abstract statement of law, tended to mislead the jury and should not have been given.

There was also some evidence that plaintiff incurred an expense of $32.50 for X-ray examinations and photographs but this was for the amassing of evidence for use in this lawsuit, not for medical treatment nor incidental thereto. It seems superfluous to say that any such item should not have been included in the jury's verdict. The other monetary items included in the verdict are sharply criticized as excessive, but since they and the general verdict are set aside they need no consideration.

Another error urged by appellant was based on the admission of Packer's testimony that he was having trouble with his sinuses. There was no allegation in his petition of such affliction and damage, and defendant's timely objection thereto was well taken.

Error is also urged against the admission of certain testimony of medical experts, which objection to this testimony, in part at least, was its absurdity—that plaintiff's inability to use his left hand and left leg might be caused by pressure on the nerve fibers which control those members of the body, as those nerves passed through the cartilaginous tissue which forms a cushioning between the bones of the cervical vertebræ. Well-informed folk who make no pretension of medical skill usually know that the nerve fibers do not pass from the spinal cord through the cartilage which serves as a cushion between the vertebræ, but through orifices in the vertebræ themselves. But this elementary fact of anatomy and physiology was probably set straight before the examination of the experts was

completed. If not, it must have supplied a good talking point before the jury against the plaintiff's whole case. However that may be, this curious bit of evidence is not likely to be offered again and needs no further comment.

Appellant also complains of the extent to which the professional experts were permitted to testify on matters of mere possibility, conjecture and the like. Expert witnesses should confine their opinions to relevant matters which are certain or probable, not those which are merely possible. (*Myers v. Shell Petroleum Corp.*, 153 Kan. 287, 302-303, 110 P. 2d 810.) We think, however, that the trial court's instructions completely and competently dealt with this subject, thus—

"23. . . . You are not justified in finding that a fact is proven solely on the statement of an expert witness that such fact is possible. No fact can be proven by expert evidence alone unless such evidence shows the probability of the existence of such fact or the evidence of the expert shows a justifiable opinion of the existence of such fact. But you are the sole judges of the facts proven or not proven by a careful consideration of all the evidence submitted to you."

In the first trial plaintiff charged both Jasperson's employer and Dannenberg, plaintiff's own employer, with negligence. The jury exonerated Dannenberg, so in the second trial the issue of Jasperson's alleged negligence was stressed—quite properly of course; but the fact that Dannenberg will not have to pay damages does not lessen in the slightest degree every pertinent fact concerning what he did or failed to do, which may have caused or contributed to plaintiff's injury and damage, or which tended to show that the accident and injury of plaintiff was not caused by the negligence of the driver of the Jasperson car.

The other matters urged on our attention in the several briefs of the parties have all been diligently considered, but we discern nothing further which needs discussion.

The order of this court reversing the judgment and remanding this cause for a new trial is adhered to (*ante*, p. 191, 146 P. 2d 401).

WEDELL, J. (concurring): In the argument on rehearing counsel for appellee insists appellee is entitled to judgment for the reason the record discloses plaintiff's injuries were the result of the concurrent negligence of both defendants and that under such circumstances the test is not whether the act, or acts, of one or the other defendant was the proximate or legal cause of the accident,

and cites *Pinson v. Young*, 100 Kan. 452, 164 Pac. 1102; *Mayhew v. DeCoursey*, 135 Kan. 184, 10 P. 2d 10; *Tilden v. Ash*, 145 Kan. 909, 67 P. 2d 614; *Neiswender v. Shawnee County Comm'rs*, 151 Kan. 574, 101 P. 2d 226; *Taggart v. Yellow Cab Co. of Wichita*, 156 Kan. 88, 131 P. 2d 924. If it were not necessary to remand this case for a new trial the point, in my opinion, would be entitled to serious consideration for the reason that the special findings clearly disclose both defendants were guilty of negligence and that the accident probably would not have occurred if either defendant had exercised the necessary care. Since the case is to be retried I deem it important, if the facts prove to be the same or similar to those in the instant record, that the subject of concurrent negligence should receive the careful consideration of the trial court. I think, however, that is all that it is necessary to say upon the subject at this time.

HOCH, J., joins in the foregoing concurring opinion.